UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA V.,[1] <br>       Plaintiff <br>     v. <br> ANDREW M. SAUL, Commissioner of Social Security,[2] <br>       Defendant. | Case No. 2:19-cv-02586-GJS <br><br> **MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Maria V. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 10 and 19] and briefs addressing disputed issues in the case [Dkt. 16 ("Pl. Br."), Dkt. 17 ("Def. Br.") and Dkt. 18 ("Reply")]. The matter is now ready for decision. For the reasons discussed

---

[1]     In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party.

[2]     Andrew M. Saul, now Commissioner of the Social Security Administration, is substituted as defendant for Nancy A. Berryhill. *See* Fed. R. Civ. P. 25(d).

below, the Court finds that this matter should be affirmed.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

On September 29, 2015, Plaintiff filed her application for DIB alleging disability based on a variety of issues including back pain, diabetes, high blood pressure, and hypercholesterolemia. [Dkt. 15, Administrative Record ("AR").] Plaintiff's application was denied initially, on reconsideration, and after a hearing before Administrative Law Judge ("ALJ") Richard T. Breen [AR 1-6, 11-21.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 416.920(b)-(g)(1). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2015, the amended alleged onset date. [AR 13.] At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spinal and thoracic spinal areas and obesity. [AR 13.] The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 15.]

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of sedentary work. [AR 15.] Applying this RFC, the ALJ found at step four that Plaintiff was not able to perform her past relevant work as a phlebotomist. [AR 19]. At step five, the ALJ found that Plaintiff was capable of performing other work that exists in significant numbers in the economy, including the representative occupations of addresser, document preparer, and table worker. [AR 20.] Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. [AR 1-6.] This action followed.

Plaintiff raises the following arguments: (1) the ALJ failed to properly consider the treatment records produced by her treating physician; (2) the ALJ failed to properly assess her Residual Functional Capacity ("RFC"); (3) the ALJ failed to

find her diabetes a severe impairment; and (4) the ALJ's finding that she could perform other work was not supported by substantial evidence. [Pl. Br. at 4-19; Reply at 1-9.] Plaintiff requests reversal and remand for payment of benefits or, in the alternative, remand for further administrative proceedings. [Pl. Br. at 18-19.] The Commissioner asserts that the ALJ's decision should be affirmed. [Def. Br. at 1-12.]

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

///
///

3

## IV. DISCUSSION

### A. The ALJ Properly Assessed the Medical Evidence and Plaintiff's RFC

Plaintiff first contends that the ALJ "failed to give adequate weight to the opinion" and treatment records submitted by her long-time treating physician—Raymond Folmar, M.D. [Pl.'s Br. 4-10.] According to Plaintiff, the ALJ should have—based on Dr. Folmar's diagnoses and clinical findings—found that she is unable to perform sedentary work. In a second related issue, Plaintiff argues that the ALJ's failure to credit her treatment records resulted in a flawed RFC that did not properly account for the impact of her obesity on her other impairments. The Court finds that a remand or reversal on these contentions is not warranted.

#### 1. Legal Standard

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *see also* 20 C.F.R. § 404.1527. In general, a treating physician's opinion is entitled to more weight than an examining physician's opinion and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).[3]

---

[3] For claims filed on or after March 27, 2017, the opinions of treating physicians are not given deference over the opinions of non-treating physicians. *See* 20 C.F.R. § 404.1520c (providing that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"); 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). Because Plaintiff's claim for DIB was filed before March 27, 2017, the medical evidence is evaluated pursuant to the treating physician rule discussed above. *See* 20 C.F.R. § 404.1527.

An ALJ must provide clear and convincing reasons supported by substantial evidence to reject the uncontradicted opinion of a treating or examining physician. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). Where such an opinion is contradicted, however, an ALJ may reject it only by stating specific and legitimate reasons supported by substantial evidence. *Bayliss*, 427 F.3d at 1216; *Trevizo*, 871 F.3d at 675. The ALJ can satisfy this standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (when a treating physician's opinion is not given controlling weight, factors such as the nature, extent, and length of the treatment relationship, the frequency of examinations, the specialization of the physician, and whether the physician's opinion is supported by and consistent with the record should be considered in determining the weight to give the opinion).

    **2.**    **Relevant Medical Evidence**

        i.    <u>Dr. Folmar's Treatment Records</u>

Plaintiff treated with Dr. Folmar for three years after she fainted at work and injured her back in February 2014. [AR 44, 565-581, 590-592.] In a series of treatment records, Dr. Folmar listed Plaintiff's symptoms and impairments (without explanation or detail) as "diabetes Type 2, sciatica, right side chronic back pain greater than 3 months, positive straight leg raise, decreased range of motion (ROM), limp, waddling gait, and uses cane." [AR 567, 569-570.] On July 14, 2014, in connection with Plaintiff's short-term disability claim, Dr. Folmar limited Plaintiff to "standing, sitting, pushing (standing no more than 10 minutes) lifting/pushing no more than 10 pounds; no repetitive bending – bending for more than 1 minute; Limited driving." [AR 304.] On a July 7, 2015 return to work form, Dr. Folmar approved Plaintiff to return to work with restrictions of "no prolonged standing,

5

walking, lifting or bending, for more than 10 minutes in 1-hour period until further notice." [AR 413.]

Dr. Folmar did not complete a medical impairment questionnaire or otherwise provide an opinion about Plaintiff's functional limitations expected to last 12 months or longer.

ii. <u>Examining Physician – Dr. Ulin Sargeant</u>

On January 2, 2016, Dr. Sargeant performed a complete internal medical evaluation of Plaintiff. [AR 367-371.] Dr. Ulin noted that Plaintiff is "a well-developed but morbidly obese Hispanic female" with non-insulin dependent diabetes and history of hypertension. [AR 367-368.] At the appointment, Dr. Sargeant also noted Plaintiff's primary complaint of chronic back pain which began two years earlier. Plaintiff explained that she had an argument with her supervisor and then she felt very light headed and she lost consciousness soon after the argument. When she awoke, EMS had to take her to the emergency room because of severe back pain and because she had hit her head. She continues to have progressive pain in the low back that is worse on the right side with numbness or radiculopathy in the right lower extremity. [AR 367.] Dr. Ulin noted that at the time of the examination, Plaintiff's primary care physician had sent her for MRI's, X-rays, and CAT scans of her back. Plaintiff had also been referred for physical therapy and pain management, but no surgery had been done and Plaintiff had not received cortisone injections, nor had she been to the emergency room for severe pain.

Upon examination, Dr. Sargeant observed that Plaintiff had a "normal gait and balance and [she was] not using an assistive device for ambulation." [AR 368.] He noted that Plaintiff had "a lot of tenderness in the lumbar spine that starts approximately in the mid thoracic spine and extends to the tailbone area. There is also tenderness in the paralumbar muscles." [AR 369.] Plaintiff also had a positive axial load test and a positive straight leg test on the right. [AR 369.]

Based upon the overall examination, Dr. Sargeant opined that Plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently. She can walk, stand and sit for six hours in and eight-hour work day and she can push and pull on a frequent basis. Dr. Saargeant concluded that no assistive device is needed. [AR 371.]

### iii. Reviewing Physician – Dr. B. Vaghaiwalla

Dr. Vaghaiwalla prepared his physical RFC evaluation of Plaintiff on January 15, 2016 [AR 69-76.] Based on Plaintiff's medical records, Dr. Vaghaiwalla observed that Plaintiff had the following medically determinable impairments: spine disorders, diabetes mellitus, and essential hypertension. [AR 72.] Dr. Vaghaiwalla then opined that Plaintiff should have the following work restrictions: can occasionally lift 50 pounds and frequently lift 25 pounds; can stand, walk, and sit six hours out of an eight-hour day. Plaintiff is also limited in her ability to push and pull and she should only occasionally use ladders, ropes, or scaffolding. [AR 74.]

### iv. The ALJ's Findings

The ALJ discussed the medical evidence and specifically Dr. Folmar's treatment records and return to work forms as follows:

> In a series of forms entitled "Return to Work or School" completed between 2014 and 2016, the claimant's treating physicians indicated the claimant could return to work, but with no prolonged standing, walking, lifting, or bending for more than ten minutes. These opinions are not persuasive because they are not supported by other objective evidence in the record, including the objective medical evidence as discussed above, and the opinions of Dr. Sargeant and Dr. Vaghaiwalla, which I have found to be somewhat persuasive. In light of this lack of support, it appears the claimant's treating physicians relied quite heavily on the subjective reports of symptoms and limitations provided by the claimant and seemed to accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. Notably, in a "Return to Work or School" form dated June 8, 2015, a treating physician opined the claimant could

return to work without restrictions. This inconsistent assessment, provided without any explanation, casts additional doubt on the reliability of the opinions expressed in the "Return to Work or School" forms.

[AR 18.]

### 3. Analysis

At the outset, the Court notes that contrary to Plaintiff's contentions, the record does not contain an opinion from her treating physician, Dr. Folmar, regarding her long-term functional limitations. *See* 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restriction."). Instead, Dr. Folmar's treatment records and return to work forms reflect Plaintiff's temporary limitations for the purposes of her short-term disability—which does not adequately address the nature and extent of her physical conditions. The only medical opinions addressing Plaintiff's physical limitations were provided by examining physician Dr. Ulin Sargeant, and state agency reviewing physician, B. Vaghaiwalla, M.D. [AR 69-75, 367-371.] Based on the consultative examination and the subsequent review of Plaintiff's medical records, these physicians opined that Plaintiff was at least capable of performing a wide range of medium work. *Id.* As Dr. Folmar did not provide a treating opinion, Plaintiff has failed to show that the ALJ erred in assessing the opinion evidence.

In any event, because Dr. Folmar's findings conflicted with the opinions of other doctors in the record, the ALJ needed only to provide specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Folmar's assessment of Plaintiff's limitations. *See Bayliss*, 427 F.3d at 1216. The ALJ did so here. First, the ALJ opined that Dr. Folmar's findings were not supported by credible evidence in the record. [AR 18, citing 278-79, 293, 304, 310, 317-18, 336,

345, 361-64, 517.] The ALJ noted that Dr. Folmar and other treating doctors appeared to rely quite heavily on the subjective report of symptoms and limitations provided by Plaintiff. [AR 18.] The ALJ explained that he did not find Plaintiff's statements fully credible because they were inconsistent with her routine course of treatment consisting of "prescribed medications, physical therapy, home exercises, and a TENS unit" without evidence of repeated or extended hospitalizations. [AR 17-18.] *See, e.g., Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2001) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.").

Second, the ALJ found that the treatment records conflicted with the other medical opinion evidence in the record. For example, Dr. Folmar noted Plaintiff's use of a cane, however Dr. Sargaent noted that Plaintiff did not use a cane during her consultative examination and no assistive device is needed. [AR 18].[4] Further while Dr. Folmar and Dr. Sargaent both documented positive straight leg tests, Dr. Folmar's temporary restrictions of standing and sitting for no more than 10 minutes were far more extreme than the 6 -hour sitting and standing limitations opined by Dr. Sargaent. [AR 18-19.] In other words, although upon examination both Drs. Sargaent and Folmar documented similar findings about Plaintiff's symptoms, the physicians came to drastically different conclusions regarding Plaintiff's ability to stand or sit in the work day. Given this discrepancy, the ALJ was entitled to rely on Dr. Sargaent's detailed and well explained opinion over the unexplained treatment notes provided by Dr. Folmar.

Third, the ALJ found that Dr. Folmar's treatment records lacked explanation and therefore his findings with respect to Plaintiff's temporary restrictions were

---

[4] Plaintiff testified at the administrative hearing that she used a cane at her consultative examination. [AR 55.] However, the discrepancy between Plaintiff's testimony that she used a cane during the examination and Dr. Sargent's report that she did not use a cane during the examination appears to be inconsequential because the ALJ included the use of a cane in Plaintiff's RFC. [AR 15, 55.]

brief and conclusory, and not supported by objective evidence on its face. This was a legitimate reason to reject Dr. Folmar's treating records as "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings." *See Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted).

In a related argument, Plaintiff contends that because the ALJ failed to adequately credit her treating physician's treatment records, her RFC failed to incorporate the impact of her obesity on her limitations. This argument is equally meritless. After finding Plaintiff's obesity to be a severe impairment, the ALJ opined that "even when [Plaintiff's] obesity is considered in combination" with her impairments "the severity of these conditions does not result in extreme limitations required by the listings." (SSR 02-01p, 2002 SSR LEXIS 1). [AR 15.] The ALJ also considered Plaintiff's obesity in weighing the opinion evidence. Although the examining and reviewing physicians opined that Plaintiff could perform work at the medium exertional level, the ALJ gave Plaintiff the benefit of the doubt and found that "in light of [her] obesity and persistent complaints of back pain, as well as [her] testimony regarding her problems with balance" she should be limited to a sedentary exertional level. In finding that Plaintiff is limited to sedentary work, the ALJ also limited Plaintiff to "the use of a single-point cane when walking away from the workstation." [AR 15.] The ALJ therefore weighed the evidence and incorporated limitations to account for how Plaintiff's obesity impacts her other impairments and he factored those limitations into Plaintiff's RFC. Further, Plaintiff has not identified any specific obesity-related impairments that would result in a more limited RFC than the one arrived at by the ALJ. Thus, the Court finds no error based on the ALJ's finding that Plaintiff's obesity limits her to sedentary work with the use of a cane.

**B.     The ALJ Properly Evaluated Plaintiff's Diabetes**

Next, Plaintiff argues that the ALJ should have found that her diabetes mellitus was a severe impairment at Step Two. Specifically, Plaintiff asserts that her repeated elevated blood glucose levels documented throughout the record indicate that her diabetes is not well controlled and therefore a severe impairment. [Pl.'s Br. 10-12.] The Commissioner, in turn, contends that the record does not establish that Plaintiff's diabetes significantly limited any workplace activities and Plaintiff failed to meet her burden of establishing that this impairment was severe. [Def.'s Br. 5-8.] The Court agrees.

At step two, a claimant must make a "threshold showing" that (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *Bowen v. Yuckert*, 482 U.S. 137, 146-47, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). Thus, the burden of proof is on the claimant to establish a medically determinable severe impairment that significantly limits his/her physical or mental ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(a), 416.921(a). Significantly, the Ninth Circuit has determined that "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993). In other words, a medical diagnosis alone does not make an impairment qualify as "severe."

Here, the ALJ found a lack of any evidence that Plaintiff's diabetes diagnosis caused more than a mild limitation in any of the functional areas and was therefore not severe. [AR 19.] Substantial evidence supports the ALJ's determination. *See Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (explaining that impairments are non-severe if they have no more than a minimal effect on a claimant's ability to work). As the ALJ noted, while laboratory tests showed some elevated blood glucose levels despite a prescription for oral Metaformin (a diabetes medication), there was nothing in the record from her treatment providers or other

11

medical evidence to indicate what affect (if any) diabetes had on Plaintiff's cardiovascular, neurological, or respiratory functioning. [AR 14, 340, 359-60, 377-78, 389, 394, 531-32, 534-36, 585, 588, 599.] Plaintiff's treatment records consistently observed regular heart rate and rhythm, normal respiratory effort, normal breath sounds, and normal deep tendon reflexes. [AR 14, 234-41.]

Plaintiff's argument here appears to confuse conditions with severe impairments. While she emphasizes her elevated glucose levels as demonstrated evidence of her diabetes, Plaintiff does not even attempt to argue that her diabetes significantly limits her ability to do work activities in any particular way. This deficiency is significant because even if a claimant receives a particular diagnosis, this alone is insufficient to warrant a finding of a severe impairment at step two, as the mere existence of an impairment, or even multiple impairments, does not establish severity. *Matthews*, 10 F.3d at 680*; see also Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) (*citing Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)) ("[T]he claimant must show more than the mere presence of a condition or ailment."); *Holaday v. Colvin*, 2016 U.S. Dist. LEXIS 29716, 2016 WL 880971, at *12 (E.D. Cal. Mar. 8, 2016) ("The mere fact that plaintiff was diagnosed with such conditions is, by itself, insufficient to demonstrate that they were 'severe' for step two purposes."); *Mahan v. Colvin*, 2014 U.S. Dist. LEXIS 65255, 2014 WL 1878915, at *2 (C.D. Cal. May 12, 2014) ("[A] mere diagnosis does not establish a severe impairment.")

Moreover, despite records showing she maintained higher than recommended glucose levels while on medication, Plaintiff reported to the consultative examiner that her "non-insulin dependent diabetes" was under "moderate control" with medications with "no complications." [AR 14, 367.] The ALJ took this into consideration and also noted that further findings from the consultative examination revealed that Plaintiff's diabetes had little if any effect on her general cardiovascular, neurological, and respiratory functioning. [AR 14, 367-71.]

Consequently, the Court finds no error with the ALJ's conclusion that Plaintiff's diabetes is non-severe.

### C. Substantial Evidence Supports the ALJ's Step Five Finding

As a final matter, Plaintiff argues that the ALJ's finding at step five is flawed because the ALJ failed to incorporate all of Plaintiff's limitations into her RFC. [Pl.'s Br. 14-18.] Defendant contends that because the ALJ's RFC finding was correct, the ALJ's reliance on the VE's testimony for the hypothetical consistent with the RFC finding was also valid. [Def.'s Br. 10-11.]

Plaintiff's contention that the ALJ's step five analysis is flawed essentially restates her argument that the ALJ improperly rejected: (1) the records from her treating physician, (2) the impact of her obesity on her impairments, and (3) her subjective testimony. Plaintiff does not argue that the hypothetical posed to the VE failed to include all the limitations found in her RFC, instead Plaintiff contends that there is no way she can complete sedentary work on "a regular and continuing basis" because "she must alternate sitting, standing, and lying down during the day" and the side effects from her medications "interferes with her ability to perform in a competitive work environment." [Pl.'s Br. at 15-17.] However, an ALJ is not obliged to accept as true limitations alleged by Plaintiff and may decline to include such limitations in the vocational expert's hypothetical if they are not supported by sufficient evidence. *See Martinez v. Heckler*, 807 F.2d 771 (9th Cir. 1986); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Hall v. Colvin*, No. CV-13-0043, 2014 U.S. Dist. LEXIS 45006, at *24-25 (E.D. Wash. Mar. 31, 2014)("A claimant fails to establish that a Step 5 determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected.")

As discussed above, because substantial evidence supports the ALJ's RFC finding, the hypothetical posed to the VE properly encompassed all of Plaintiff's limitations, and in turn, the ALJ did not err at step five of the sequential evaluation.

*See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) ("In arguing the ALJ's hypothetical was incomplete, [the claimant] simply restates her argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted her testimony and the testimony of medical experts. As discussed above, we conclude the ALJ did not."); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) ("It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record"). Although Plaintiff argues for a different reading of the record, the ALJ's interpretation of the evidence was rational and should be upheld. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). On this record, the reliance by the ALJ on the vocational expert's testimony was proper.

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: June 12, 2020

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE